Case Numbers 19-1961, 1975, 1983, 2000, 2005, 2008, 2011, 2012 Marlana Sirls et al. Leanne Walters et al. v. State of Michigan et al. Arguments not to exceed 20 minutes per side. Ms. Bettenhausen, you may proceed for the appellant. Thank you. Good morning, Your Honors. I'm Assistant Attorney General Margaret Bettenhausen here on behalf of Governor Whitmer, former Governor Snyder, and former Treasurer Dillon. I've been allocated eight minutes, and will reserve two of those minutes for rebuttal. May it please the Court. To begin, as we stated in our abeyance motion, we agree that Carson controls the outcome of this case with respect to our clients, but we assume that there is a reason why the Court denied that motion, so I'm primarily here to answer your questions. But before I do, I want to touch briefly on two points, and these apply just as much to these appeals as they do in the Carthen case. First, respectfully Judge Moore, the Carthen opinion, as applied to Snyder and Dillon, represents a significant expansion of this Court's decision in Girton in two ways. One, it holds Snyder and Dillon, two high-level officials, liable for the conduct of others, namely their subordinates, and two, it holds Snyder liable for failing to protect and warn the public of suspected health threats, which brings me – these are two well-established limits on government official liability that Girton recommends. Counsel, yeah, just to make sure I understood what you said at the outset, on behalf of your three clients, you would say Carthen controls, and so the only way out of this jam is in bank review. Is that accurate? Yes, Your Honor. Okay. That is correct. And just going back quickly to my second point, by expanding Girton, the Carthen opinion, it will increase societal costs of litigation and very likely will have the opposite of its intended effect, and by that I mean it will result in fewer competent, capable people willing to take these types of high-level jobs. So turning to the first limit on liability. To clarify one thing, did Girton address the Snyder and Dillon issues? Actually, Snyder was dismissed in Girton before it got to the appellate phase. So Carthen was not in conflict with anything that the Court of Appeals said regarding Snyder and Dillon in Girton? Girton did not address Snyder and Dillon specifically, but there are certainly conflicts, and that's the point – the two primary points I'm trying to make here regarding being liable for your subordinates or the conduct of others and being liable for failure to warn and protect. And regarding the first one, Carthen holds that Snyder and Dillon are liable for the water switch, but the most obvious evidence that this is incorrect and basically holding Snyder and Dillon responsible for subordinate conduct is that in Girton, Director Wyant, who is the head of the DEQ, and that's the department responsible for regulating the water, he's also alleged to have approved that same water switch, yet he was dismissed. Why was he dismissed? Because he wasn't involved in the day-to-day activities involved in the switch, the water treatment decisions, the upgrading of the plant. Same goes for Snyder and Dillon. They're exactly like Wyant. In fact, even more so, it is alleged in these cases and in Carthen that Director Wyant, he issued his approval and Snyder and Dillon based their approval of the water switch on Wyant. If Wyant's approval of the water switch is not conscience-shocking, how can Snyder and Dillon's be conscience-shocking based on that exact same conduct? The obvious answer is that it cannot. So in that way, Carthen improperly expands Girton. And I think this touches, I just want to go real quickly to the Girton oral argument. Judge White, if you'll recall, in that argument, the court focused a lot on what they coined in that argument as concentric circles. And that means like who is closest to the wrongful conduct, the alleged unconstitutional conduct. And during oral argument in Girton, the plaintiffs have said clearly at the center, the most liable, the most likely to be held liable for that unconstitutional conduct, it was the Flint City officials who were involved in the day-to-day activities leading up to the switch and all of that. The next circle had the DEQ regulators in it. Maybe they weren't involved day-to-day, but they did have an oversight role. At the outer edge of that, least likely were Director Lyon, Director Wyant, and Chief Medical Executive Wells, all high-level officials that had supervisory roles, all dismissed in Girton. And outside of that, that's where you find Snyder and Dillon. Those individuals reported to them, and that's all alleged in the complaint. So in order to faithfully follow that aspect of Girton, Snyder and Dillon shouldn't be held liable for the same exact conduct that Wyant and Lyon were dismissed for. I want to address real quickly the second limit on liability more specifically, because Carthan also missed the mark on the substantive due process obligation to warn and protect the public. DeShaney says there's no such duty, and Girton followed that ruling. Director Lyon was alleged in Girton, just like he's alleged here, to have also failed to sound the alarm when he received information regarding lead in Legionella. And I'll point you to the paragraphs in the complaints in this appeal, paragraphs 199 through 201. Just like those allegations against Director Lyon that he failed to warn and protect despite having information, Carthan held that Snyder downplayed and delayed by not switching water sources back faster, by failing to supply water filters, by failing to quickly declare a state emergency. Again, liability for failure to warn and protect. No cases clearly establish that not switching back faster, failing to provide water filters, not raising the red flag constitutes a constitutional violation. This is typical in kind, if not in degree, of the type of bad judgment, if you will. And that was something, again, that was talked about in the Girton oral argument, that the political process is intended to address. Failure to warn and protect is not something that amounts to a constitutional violation. The red sign has been up for quite a while for you. I don't know if you've noticed that. Oh, sorry, Your Honors. I'll touch on my other points in rebuttal. Thank you. May it please the court, I'm Charles Barbieri. I appear on behalf of the MDEQ defendant appellants. I'll be brief. We, like State Defendant Council, recognize that Girton and Carthan have been decided, we believe wrongfully in several respects, but I'm not here to tilt windmills at this point. The big question that your colleague addressed first off is, do you agree that the Carthan and Girton opinions control? Is there anything different vis-a-vis your clients and the complaints that are involved in this case? There are probably subtle differences. For example, in the Walters case, I believe that there were some plaintiffs that did not allege whether they lived in Flint or consumed water in a Flint home. But in terms of the material allegations that your honor was involved with in the Carthan case, they are similar. I acknowledge that. Thank you. And I'm respectful of the point that you're making, your honor. I do want to make two points or three points, if I may. First, in terms of either Girton or Carthan controlling, it remains our position that the allegations in the plaintiff's complaint don't plausibly allege that any MDEQ defendant created or perpetuated the exposure to allegedly contaminated drinking water. I don't abandon that position whatsoever. I do want to make a point that in the Carthan decision, it went beyond Girton in my view because it focused on whether there was a failure to respond. For example, the Del Toro report, there was a suggestion in the Carthan decision that there was a failure to respond. I do not believe that's what the allegations show, nor what the record that we made available to your honors show as well. We would submit that as presented in the documentation in our briefing, that in fact, in the aftermath of the Del Toro report, there was a requirement that Flint install corrosion control. And that to me does not suggest or in any way give plausibility to the suggestion that there was a failure to act or any activity or conduct that would amount to that. Insofar as failure to act concern, I agree with what sister counsel has indicated. That is not enough to demonstrate the type of callous disregard that might amount to a constitutional violation for bodily integrity. So I make that point. The additional point which I'd like to make is that if this court were to disagree with the position that we've taken, I believe that what Judge Sutton indicated in the Girton on Bonk decision bears consideration here. I believe that the matter, if it is remanded, should be limited or should limit discovery and focus discovery only whether an MDEQ defendant appellant acted with deliberate indifference or the conscious shock and conduct that would merit liability arising from the substantive due process alleged violation. Would discovery not be appropriate regarding knowledge of facts as fact witnesses? Well, Your Honor, I understand the point that you're making, but my clients remain in a liability situation that ought to be removed first and foremost in terms of that circumstance. Whether they would have additional information to bear at some point in time, that might be prudent for them. But Your Honor, I respectfully submit that because of the constitutional issues that are so involved here and the threat of liability that says that it merits some sequential consideration of what discovery should be conducted. Obviously, I would hope that the court could reverse, but in respect to what the court may decide today, I would hope that it might give guidance to the district court in attempting to provide relief as expeditiously as possible. Is discovery ongoing vis-a-vis your clients now? Yes and no. We have not answered any material complaint of an active piece of litigation. The depositions of our clients are scheduled in the weeks ahead. Thank you. I have submitted my points. I reserve my one minute for rebuttal if I need it. Yes. Thank you. I proceed. Good morning, Your Honors. May it please the court. Edward Zaney on behalf of City of Flint Individual Defendant Doherty Johnson. I have four minutes with a one minute reserve for rebuttal. We filed in this case a reply brief, and I think that was for Mr. Johnson and Mr. Glasgow, and that brief really narrowly tailored the arguments of substance regarding the 12B6 issue, i.e. the sufficiency of the allegations contained within the body of the complaint. We articulate in the arguments the shortfalls of the plaintiff's complaint based on what is alleged versus what is not alleged, and we emphasize the points to both. And I think it really identifies and codifies our position based on this developed process. What we're asking the court to do today, specifically for Mr. Johnson, is to treat him as an individual, an individual defendant, give him individual consideration and apply only those individual inferences and considerations of allegation on these pleadings. We believe that the concept of the individuality, the brush has been painted rather broadly. Oftentimes he's caught up in allegations directed towards other defendants, and I think it's tantamount to the overall inferences that reach the level of plausibility in the complaint. Excuse me, one question. Is there anything in this complaint vis-a-vis your client that is different from the complaint that was considered in the Carthan case? I believe so, and I believe it comes in the form and nature of the allegations, though there's allegations that are consistent in that previous considered pleading. Here we have six allegations. We articulate those with specificity on page one through three of our reply brief. And I still believe that even with these allegations, these six allegations, they do fail to state or identify, in any way, allege that there was subjectively, that my client was subjectively aware of the risk of serious injury. Excuse me, before we get to what those are saying, were they saying anything different than was stated in the Carthan complaint? I think so, in some regard. I believe that they do rely on the same, our argument relies on the same consistency. The argument that was used in the Carthan regarding the press release, regarding the FOIA, regarding the role of Mr. Johnson, those are all consistent in these pleadings. They do further, this complaint identifies that he had the authority with Mr. Croft to direct the switch. But, again, it further lacks any subjective awareness of the risk of serious injury in any of his course or conduct. Counsel, I'm not sure I'm understanding your answer. I was assuming there was not a material difference between this case and the Carthan opinion. Is there something, in this case, that Carthan does not address? As far as, within the four corners of the pleadings, correct? Is that the question? I mean, I think I'm just trying to ask the same question Judge Moore is asking, and I wasn't sure I was understanding the answer. This panel can't revisit Carthan, right? And so, we're just trying to make sure. The reason we're having argument is just making sure we're understanding whether there's some reason Carthan doesn't control. And, you know, you just have to tell us that. There's still the in-bank possibility. That sits out there. But we just want to make sure for this panel decision we are accurate as to what Carthan controls. I came into the argument thinking Carthan controls. Just tell me why I'm wrong. Well, you're correct in the assessment of the law contained within Carthan. But the pleadings are the driving force here as the basis for this appeal. And the question is, are the pleadings consistent with the pleadings in Carthan? They're consistent with the pleadings in Carthan to the extent that these pleadings identify Mr. Daugherty Johnson as a utilities administrator. And Mr. Johnson was a supervisor of Mr. Croft. That Mr. Johnson was, excuse me, that Mr. Johnson in some way received, or Mr. Glasgow in some way received pressure from Mr. Johnson. And that he signed off on a press release contained in there, contained within the body of the complaint relating to the Flint water being safe. And that he failed to respond to a FOIA. So to the extent that those are consistent, yes, they are consistent with the Carthan pleadings. How is this case different from Carthan? We're all asking the same question, and I think we're all suffering from the same confusion. How is this different? If I could line up, I did have a T-chart prepared. I have a T-chart that identifies what pleadings are here under Carthan and what pleadings are under Searles. And in looking at the T-charts, these allegations line up to some extent on those allegations that I identified. What's different is the question. What's different is when you look at them in the context as alleged, I think they lead to a different inference. And, yeah, Dwight? Well, and I agree. I think my inference is that it doesn't rise to the level of plausibility. That the inference is still consistent with our thought and our position that a claim is implausible against Doherty Johnson. And what is different about the allegations here that lead you to make a different inference? And respectfully, I don't want to misrepresent based specifically on how they're alleged. Summarily, those consistencies I've identified are alleged. And I will concede that those consistencies are alleged and those allegations were used in developing the opinion under Carthan. Thank you. Your time has expired. Thank you, Your Honors. We've been looking beyond your time. Thank you. Next. Is it Mr. Parker? Yes, Your Honors. Good morning, and may it please this Honorable Court, Christopher Parker, rising on behalf of Appellant Michael Glasgow, City of Flint official in this case. I've got two minutes and I do not have any time for rebuttal, so I'm going to be very brief. I will rely upon and adopt the arguments of Brother Counsel Edward Zaney, and I will, as a way to, I guess, head off the potential question that's coming. The materiality, or I suppose the substance of the allegations contained within Carthan are consistent with those that are alleged in the Searles opinion that were specifically, as Mr. Zaney pointed out, with regard to those that were relied upon by the court in Carthan. However, it's our position that Mr. Glasgow's actions do not demonstrate a deliberate indifference to the right to bodily integrity of the residents of the City of Flint. Rather, his actions showed deference when he notified the MDEQ regulators that the Flint water treatment plant was not ready to begin operation. That was prior to the switch, and the plaintiffs in the Carthan case had admitted that that was not action that showed deliberate indifference. Further, after the switch, he sent in all of his lead and copper testing, and he used instructions from the MDEQ's website to hand those out for sampling with the City of Flint residents. And thereafter, he was directed by individuals at the MDEQ, his regulators, the individuals who could issue him citations for not following their instructions, to remove certain water test results, which were in fact removed by these MDEQ officials. And that's alleged right on the face of the complaint here. With respect, with regard to the allegations as against Mr. Glasgow, it's our position that they do not demonstrate an indifference or callous disregard to the plaintiff's rights. I have seven seconds for any questions, or I suppose... To ask the question in a different way, in order to rule in favor of your client in this case, would we have to overturn Carthan? Your Honor, I suppose because the allegations, the substance of the allegations contained within Carthan are the same that are relied upon in the Searle's opinion, I can't say that it wouldn't require you to overturn Carthan. The answer is yes. I, you know, I appreciate your elaborating there. Thank you. Any other questions? Thank you. Do we have any other lawyers? Is Mr. Fajan arguing? No, he is not. He's not, okay. Anyone else arguing? We have Mr. Walker for the appellee, unless you have questions for Mr. Kim. Any questions for Mr. Kim? Okay, so Mr. Walker. Good morning, Your Honor, and may it please the court. My name is Renner Walker. I'm here on behalf of the Co-Liaison Council for Individual Plaintiffs in federal court for the Walters and Searle's actions. I guess, you know, I'd like to just make as a global point, I think my colleagues agreed that Wharton and Carthan controlled this case. To affirmatively make the argument, yes, it does. We didn't depose the motion filed by the state defendants last week for that reason. And just as a final point on it, substantially, virtually every Carthan court considered pertinent is in the class complaint is also in the master complaint. That's the issue. That's an issue in this case. And so I'd be happy to go through and address the individual allegations just to maybe in reverse order. I think all of the allegations that are. For my purposes, you've told me what I needed to hear. Sure, sure. A question that comes to my mind is, is your complaint stronger in any way than the complaint that was considered in Cartham? Or is is it essentially the same? So the short answer to that, Your Honor, is yes. Slightly longer answers. Actually, this was a question that was was asked by Judge Levy. She was the district court judge for both Carthan and and this case. And in fact, I realized this morning we didn't submit it on ECF, so it's not part of the record in that regard. But after Judge Levy decided Carthan, she asked the co liaison counsel to prepare a table, sort of a key of allegations just to determine which which allegations are in the class complaint versus the individual complaints and vice versa. We found to the risk of going too deep on it. There are obviously certain allegations that are in the class complaint relating to the class action. But there are also allegations in the individual complaint that aren't in the class complaint. The one that I would point to, and it relates to Governor Snyder, is that not only was Governor Snyder aware that the Flint River would be an interim water source, that he was aware that at the time he approved the switch, that there was not a plan to implement the necessary rehabilitations of the Flint water treatment plant in order to safely use the Flint River as the Flint River. And that allegation, Your Honor, is paragraph 109 of the master complaint. In every other regard, I think the allegations are identical. The one place I will just acknowledge that we don't have an allegation as it applies to an individual defendant. I think it's paragraph 175 of the class complaint in Carthan pertains to a statement that Darnell early made about Legionella internal internal issue at McLaren Hospital. I don't think we have that allegation to my research. But that said, I don't think the allegation was in Girton either. And we have the other allegations pertaining to early is his refusals to reconnect to DWSD water service in a timely fashion and that kind of thing. The last point that I'd like to make and just to respond to my colleague on behalf of Governor Snyder. I don't think that Carthan is a significant expansion of where, in part because in Carthan and in our complaint, Governor Snyder is alleged to have been personally involved in the switch to the Flint River. And so that takes it outside the realm of mere supervisor liability. And to the extent that it wants to be, you know, more frame it in terms of concentric circles. He's actually much closer to Leonard because he has direct authority over Darnell early and Stephen Ambrose and the the manager. So he's he's a crucial function, not only of causing the Flint water crisis, but also of exacerbating it and prolonging it. The last point, just in terms of, you know, increasing the societal costs because fewer people will run for higher office. The unique tragedy that is the Flint water crisis cries out for a finding responsibility, cries out for civil liability. And I just do not believe that fewer people will run for governor of the state of Michigan. If if liability is imposed on Governor Snyder, it didn't stop Governor Whitmer, for example. One question about Dillon and Carthan, the panel remanded regarding Dillon. Do you believe that that is appropriate in this case? We remanded because both sides thought that was a good idea. Yes, I do. I and I would make the same point that, you know, my colleague, Mr. Baggins dusted is that, you know, we think former treasurer, former treasurer Dillon was, you know, very influential leading up to the switch. And the fact that he was not the treasurer on the day of the switch is not this positive. It's an apportionment of liability issue. And we'd like a chance to make that argument to the district court as well. Any questions, any further questions for Mr. Walker or any other points? Mr. Walker would like to make that you still have time. I think I may have at least just a few moments. I just am looking at my notes. And so I do actually have one very brief last point to make, Your Honor. Just to respond to my colleague, Mr. Barbieri. This isn't a case of a mere failure to respond. It's not a failure to provide notice to the public. It's it's it's pled as a deliberate indifference case. We fully believe we'll be able to to substantiate those allegations. But the tenor of the claim is not is not mere negligence or or or failure to respond. And what about the request that discovery on remand be limited? I don't think it should be limited, Judge White. And in part because I think it was your question. The MDQ defendants will still be valuable fact witnesses. And the fact that the discovery might show that either these allegations are substantiated or that there are additional allegations that are additional facts that may be discovered. There shouldn't be a limit. I will say it was in response to I think it was something that came up during the Carson argument. I think it is in Judge Sutton's concurrence is that this is not it has not been a was a fair discovery process. Judge Levy regularly convenes discovery conferences. The parties have had many opportunities to to fully ventilate discovery issues. And actually one on one point regarding the MDQ defendants, there was just a motion. And I don't know if it's been sorted and signed by Judge Levy, but there was a stipulation to gain access to some of the subpoenaed investigating files that the Michigan Attorney General's office conducted, including investigation into the MDQ. So I think at this point, a limit would be unnecessary. Any further questions or points for Mr. Walker? Thank you. Thank you, Your Honor. We're set. So we do have a couple of rebuttals, I think. Thank you again, Your Honor, and really appreciate the court's generosity with their time on these important issues. I do want to state a few things. Yes, we agree. Carson controls. There's no significant differences here. Mr. Walker did mention that here Snyder was alleged to be personally involved, but he actually said that personal involvement is authority over these other individuals. That's exactly the point we're going to. Just because Director Wyant had authority over people, he was not held liable. Same should apply to Governor Snyder. And I think that's a very important point to make. Girton held people liable. This is how they described, the Girton court described the constitutional violation. It was a forcible introduction of poisonous substance into individuals. Nothing alleged against Snyder or Dillon even remotely approaches that. And Girton recognized the two important limits on liability that were not recognized with respect to Snyder and Dillon. So I think it's important, even if an en banc review is not granted in this case, certainly members of this panel have the ability, even if they have to follow Carson, to write separately or to explain why they might not agree with certain ways in which the Carson opinion expands Girton. And finally, my point is, to be clear, the state empathizes with the extreme hardship that the Flint water crisis has placed on the residents of Flint. And I can assure you that the state of Michigan remains committed to the people of Flint. But the limiting of principles that the U.S. Supreme Court has established and that this court has followed, including following in Girton, they serve a very important public purpose. Thus, we are here to respectfully ask this court to faithfully follow Girton and to recognize those limiting principles. So if there's any other questions that the court may have, I think I might have a little bit of time left to address those. Any questions? Thank you for your time, Your Honors. Are there further rebuttals? Your Honor, very briefly, Charles Barbieri again for the MDQ Defendants. I simply want to make one comment. It's in reference to the question Mr. Walker or the response that Mr. Walker gave in reaction to Judge White's question. That is, there is a concern about how much discovery is being allowed. There's three days of discovery for some of these witnesses, including one of my clients. I don't consider that to be focused, limited discovery whatsoever, notwithstanding the suggestion that Judge Levy has control. It's wide open. I believe it ought to be limited. Thank you, Your Honor. This is a question from me concerning another published decision we had in the Carthan line of cases. Is your point about discovery something that is reviewable by us? Well, I believe it's reviewable to the extent if you decide that this case is controlled and has to be sent back for consideration of facts that you can limit that discovery to focus on the liability. Three days of discovery is not focused on liability for my clients. Have you all proposed some lines for the district court to apply in terms of whether you want to think of it as concentric circles or have you proposed anything that would limit discovery? I mean, the reason discovery applies to qualified immunity is that's the stakes. That's the whole point. And the minute you deny, you're off to the races. But my sensitivity and sympathy on that point goes down if the defendants aren't proposing something. Are you proposing something? Well, if I do not get the relief here, I will, Your Honor. So you're coming to us first for a discovery limit? Well, I actually came here originally hoping that I would reverse if I'm not going to be able to succeed in that. I am cognizant of what Judge Sutton had indicated in his concurrence in Girton, and I believe it's well placed here. And I see your card is up for timeout. And so we appreciate your argument and the arguments of every one of the council here. We very much appreciate your being here and helping us understand this case. So thank you all. And the case will be submitted and you may disconnect how you have been instructed. However, that works.